KENNETH R. KOCH, APPELLANT, V. SAM GRIMMINGER, ET AL., APPELLEES.

223 N. W. 2d 833

Filed December 12, 1974. No. 39494.

Healey, Healey, Brown, Wieland & Burchard, for appellant.

John A. Wagoner, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.
Plaintiff-appellant brought this action for false arrest and imprisonment against the defendant Sam Grimminger, county attorney of Hall County, and the defendant Willa Koch, former wife of the plaintiff. The defendant Grimminger filed a general demurrer, which the District Court sustained. The plaintiff elected to stand on his petition and the defendant Grimminger

was dismissed from the action. Plaintiff appealed. We affirm.

The issue in the trial court and here is whether the third amended petition of the plaintiff pleaded facts sufficient to constitute a cause of action against Grimminger. The determination of that issue turns upon whether or not, under the facts alleged, the county attorney was immune from suit.

The petition alleged: That the defendant Grimminger was the county attorney of Hall County and at the times mentioned in the petition was acting "within the scope of his office as County Attorney"; that the defendant Willa Koch had been divorced from the plaintiff on October 26, 1967, in Hall County and that the decree in the action ordered the plaintiff in this case to pay Willa Koch child support in the amount of $100 per month; that on February 23, 1971, the plaintiff had made advance payments in the amount of more than $700 on the child support judgment and had paid them into the office of the clerk of the District Court for Hall County; that on February 23, 1971, the defendant Willa Koch reported to the defendant Sam Grimminger that the plaintiff was in arrears in the support payments and she that day requested Grimminger to file a criminal complaint against the plaintiff; that on February 23, 1971, Grimminger did file a criminal complaint against him; (the petition does not allege under what section of the statute the complaint was filed, but apparently it was section 28-450, R. R. S. 1943); that as a consequence a warrant was issued and the defendant was placed under arrest; and that the complaint was dismissed without prosecution. The petition alleged the particulars of the claimed damage. It further alleged that such damage was proximately caused by the following acts and omissions of Grimminger: "a) He executed said complaint and filed said charges without probable cause, when in the exer-

cise of reasonable care he would not have done so. b) He failed to ascertain the status of said child support payments by the plaintiff prior to executing said complaint and filing said charges, when in the exercise of reasonable care he would have done so. c) He failed to ascertain the status of said child support payments prior to proceeding with the prosecution of plaintiff even though the plaintiff informed him said payments had been made, when, in the exercise of reasonable care he would not have so acted." The petition then, under the heading of other theories of recovery, but without further factual allegation, characterized the conduct of Grimminger as "intentional and wreckless (sic)," "malicious," and done "with the intention to confine the plaintiff within boundaries set by the defendants," and that the acts constituted "false imprisonment" and "false arrest."

This court has on many occasions considered the question of immunity from suit of a public officer for torts committed in the course of his official duties. The applicable principle has always been stated in approximately the same language. In Allen v. Miller, 142 Neb. 469, 6 N. W. 2d 594, we quoted from 22 R.C.L., § 163, p. 485, as follows: " 'Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' " In School Dist. of Minatare v. County of Scotts Bluff, 189 Neb. 395, 202 N. W. 2d 825, we restated the rule in the same language and also said: "When the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a dis-

cretion in its nature judicial, the function is quasi-judicial." Both of the above cases involved the acts of county commissioners. No Nebraska cases have been cited and we have found none from this jurisdiction which considered the question of the liability of a public prosecutor for errors committed in the scope of carrying out his duties as the prosecutor. The apparent rule in most jurisdictions is that the public prosecutor's conduct is privileged and that he is absolutely immune from suit. Restatement, Torts, sets forth the rule in the following language: "A public prosecutor acting in his official capacity is absolutely privileged to initiate or continue criminal proceedings." Restatement, Torts, § 656, p. 392.

The rationale for the rule of absolute privilege is set forth in Gregoire v. Biddle, 177 F. 2d 579. It is there held to apply even though the motive is corrupt. Policy considerations as to the extent of the doctrine of the immunity of public officers generally is extensively discussed in the various opinions in Barr v. Matteo, 360 U. S. 564, 79 S. Ct. 1335, 3 L. Ed. 2d 1434.

Section 895D of Tentative Draft No. 19, Restatement 2d, Torts, p. 38, would afford absolute immunity to judicial and legislative officers for acts within the general scope of their authority while exercising a judicial or legislative function and a qualified immunity to officers performing administrative acts. The qualified immunity applies, among other situations, when the officer is exercising a discretionary function. The rationale for the immunity is stated in Comment c in the following language: "A judge of a court of general jurisdiction or a legislator is given an immunity which is general in character. He is not liable for his discretionary acts or omissions, even though he is found to have acted with malicious or other improper motives. The reason for this holding has been held to lie not in the desire to protect the individual from liability for

his own unjustifiable conduct, but in the necessity of protecting all such officers, and with them the public service and the public interest, from the deterrent effect of suit, or threat of suit, alleging improper motives in every case in which there has been no more than a mistake, or a disagreement on the part of the complaining party, with the decision taken. The policy is to free the officer from the necessity of submitting his purposes, motives and beliefs to the uncertain appraisal of juries, or even judges. The policy is the same as that which frees the state or the local government entity from liability." The comment also says: "The immunity may extend beyond judges and legislators. It may apply, for example, to a prosecuting attorney, . . . ." In discussing the inclusion of prosecutors and certain others in this category, the comment states: "The immunity existing for these officers, however, may not extend to improper motive."

The plaintiff argues that defendant Grimminger, in filing the complaint, was performing merely a ministerial act and is therefore liable for his negligence. Plaintiff also contends we should adopt the holding of the Supreme Court of Michigan in Schneider v. Shepherd, 192 Mich. 82, 158 N. W. 182, and that if we do so the petition must be taken as stating a cause of action.

We can consider both contentions together because both involve interpretations of statutes defining the duties of the prosecutor. Section 23-1201, R. R. S. 1943, provides in part as follows: "It shall be the duty of the county attorney, when in possession of sufficient evidence to warrant the belief that a person is guilty and can be convicted of a felony or misdemeanor, to prepare, sign, verify, and file the proper complaint against such person and to appear in the several courts of his county and prosecute the appropriate criminal proceeding on behalf of the state and county. It shall be the duty of the county attorney to prosecute or

defend, on behalf of the state and county, all suits, applications, or motions, civil or criminal, arising under the laws of the state in which the state or the county is a party or interested." Plaintiff contends this statute imposes a ministerial function because if the evidence is insufficient no duty exists and if, on the other hand, evidence exists, the county attorney has no discretion for he must file the complaint. The argument then moves to its next step and asserts that since, under the factual allegations of the petition, the prosecutor in this case could have determined the insufficiency of the evidence by the simple expedient of checking the records in the office of the clerk of the District Court for Hall County, he is liable for filing an unfounded charge.

In Comment *f*, section 895D, Tentative Draft No. 19, Restatement 2d, Torts, there is an extensive discussion of what is a discretionary function. It is in part as follows: "There is no single test. Attempts to solve the problem by setting forth a precise definition of the term, discretionary function, have been less than helpful. The expression is not only a standard (see Comment *d*); it is also a legal conclusion whose purport is only somewhat incidentally related to the definitions of the two words composing it." It seems apparent to us that, in making the determinations of fact and of law that a prosecutor must make in deciding whether he will file a complaint, he must determine what the law is, whether the facts presented to him constitute a violation of some penal statute, and also in many, if not most, cases he will be called upon to make a judgment upon the reliability of the evidence that he has before him. Such a function is clearly quasi-judicial and discretionary within the meaning of those terms as we have recently defined them in School Dist. of Minatare v. County of Scotts Bluff, *supra*.

In Schneider v. Shepherd, *supra*, the prosecuting at-

torney was held liable for false arrest. The Michigan Supreme Court upheld the finding because, based upon the court's interpretation of the duties imposed by statute, the prosecutor was held as a matter of law to be acting outside the scope of his authority. The Michigan statute is in part like the Nebraska statute, section 23-1201, R. R. S. 1943, and that part is quoted in the opinion as follows: " 'The prosecuting attorneys shall, in their respective counties, appear for the State or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions, whether civil or criminal, in which the State or county may be a party, or interested.' Section 1152, How. Stat. (2d Ed.)" In the case cited, the prosecutor, through private persons, was investigating prostitution. Based upon information furnished him by these private persons and without any complaint having been filed or warrant obtained, he ordered the police to arrest all persons found at a certain address. The only information the prosecutor had was a report that a house at the address was a house of prostitution. It was in fact the home of the plaintiff and his family and had been their residence for 30 years. The Supreme Court of Michigan upheld a finding of the trial court as follows: " '. . . The investigation of alleged crimes by the prosecuting attorney, through private individuals, the acceptance of their reports as basic information upon which is issued a peremptory order to the police to arrest, without warrant, the suspected criminals, finds no statutory sanction in the prescribed powers and duties of a prosecuting attorney. If he proceed upon such a course of action, he does so at the same peril as does the unofficial citizen. His office is not a cloak to protect him from liability from a wrong thereby resulting to an innocent person subjected to a false arrest. The statute affords no such robe of immunity for it neither delegates any such duty

nor grants any such power.' " The court further held that as a matter of law there existed no probable cause and since he was acting outside the scope of his authority he stood in no better position than the ordinary citizen. The holding in that case has no application under our statute and the facts alleged in the petition.

We hold that a public prosecutor, acting within the general scope of his official authority in making a determination whether to file a criminal prosecution, is exercising a quasi-judicial and discretionary function and that where he acts in good faith he is immune from suit for an erroneous or negligent determination. This rule would not protect a prosecutor who, knowing that a particular charge is groundless in law or in fact, nonetheless intentionally files a charge and thus acts through a corrupt motive. In such a case he would not be acting within the scope of his authority.

It is true, as we have pointed out earlier in this opinion, that the plaintiff alleged that the defendant Grimminger acted maliciously, intentionally, and recklessly. The use of such words alone without allegations of fact from which malice or corruption may be inferred is insufficient to allege malice, corruption, or intentional wrongdoing in fact so as to take the acts outside the scope of his authority. The words in question constitute mere legal conclusions. Where it is necessary to allege actual corruption or bad motive or malice in order to state a cause of action, there must be an allegation of the ultimate facts from which the conclusion may be inferred in order to withstand a demurrer. Stice v. Beacon Newspaper Corp., 185 Kan. 61, 340 P. 2d 396. This accords with our own holdings to the effect that the pleading of a legal conclusion is insufficient to raise an issue of fact. Degmetich v. Beranek, 188 Neb. 659, 199 N. W. 2d 8.

AFFIRMED.